UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH CHALKER, individually, and
on behalf of all others similarly situated who
consent to their inclusion in a collective action,

      Plaintiff,

                                    Case No. 8:12-cv-02755-23TBM

v.

BURLINGTON COAT FACTORY OF
FLORIDA, LLC and BURLINGTON COAT
FACTORY WAREHOUSE CORPORATION,
d/b/a BURLINGTON COAT FACTORY,

      Defendants.
_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE CLASS

Defendants, Burlington Coat Factory Warehouse Corporation and Burlington Coat Factory of Florida, LLC (collectively "BCF"), through their undersigned counsel, file their Opposition to Plaintiff's Amended Motion for Conditional Certification of Collective Class and Issuance of Notice ("Amended Motion"), and state as follows:

## I.      PRELIMINARY STATEMENT

Plaintiff Elizabeth Chalker, a former BCF Loss Prevention Associate ("LPA"), seeks conditional certification of this matter as a collective action, and the issuance of a court-supervised notice to be sent to all LPAs "or other Loss Prevention employees with other titles" employed by BCF nationwide "within the past three years preceding this lawsuit." [DE 52.] In short, Plaintiff contends that conditional certification is appropriate as she and the opt-in Plaintiffs were purportedly denied overtime compensation pursuant to an alleged "common, uniform scheme of Burlington Coat Factory to prevent them

from being paid overtime wages" [DE 52, p.5; ¶17.]

Plaintiff makes her extraordinary request for nationwide class certification based on divergent "off the clock" allegations that include varying factual circumstances such as geography, supervision, duties, time keeping and pay practices. In doing so, Plaintiff has not met her burden of establishing the existence of similarly situated individuals who desire to opt-in to this case, nor has she provided evidence that she and other putative class members were victims of a common policy or plan that violated the law. In fact, Plaintiff's generalized allegations are contradicted by BCF's established policies, actual pay practices, Plaintiff's testimony, and even the Declarations submitted by Plaintiff.

Plaintiff's numerous evidentiary shortcomings include: **(1)** submitting only 8 consents to join (from only 8 stores in 5 States) to justify collective action treatment of thousands of current and former employees in 500+ stores in 44 States and Puerto Rico, despite this action pending for 7 months and Plaintiff's counsel personally contacting putative class members and advertising on a dedicated website; **(2)** Plaintiff's Declarations are based on hearsay, boilerplate, and conclusory allegations about matters that Plaintiff and the opt-ins cannot possibly have personal knowledge; **(3)** Plaintiff's Declarations establish that Plaintiff and the opt-ins are not similarly situated for purposes of collective action as they did not share common alleged job duties and pay practices; **(4)** Plaintiff's Declarations establish that BCF did not have a common policy, plan or scheme to deny LPAs overtime compensation; **(5)** the discovery (DE 52-1) Plaintiff relies upon is incomplete and Plaintiff misrepresents it; and **(6)** Plaintiff's Declarations establish that this matter cannot be efficiently administered as a collective action as they allege varying off the clock violations committed by individual local managers which

2

will potentially result in thousands of mini-trials.

In contrast, BCF has presented multiple Declarations based on personal knowledge establishing, among other things, that **(1)** BCF maintains established written policies expressly prohibiting off-the-clock work and mandating overtime pay in accordance with applicable law; **(2)** Plaintiff, the opt-ins, and the putative class members have recorded and received thousands of hours of overtime pay, thereby dispelling any notion of a policy or practice of prohibiting overtime pay for overtime actually worked; **(3)** little interest exists among the putative class members to join this action; **(4)** Plaintiff and the opt-ins are not similarly situated; and **(5)** any potential class would be unmanageable due to the precise, individualized inquiries and defenses in this case – this is not a case in which an indisputable policy or practice exists that, if found to violate the FLSA, would result in class-wide liability. As such, this is not a case in which conditional certification should be granted, and the Court should deny Plaintiff's Amended Motion.

## II.  FACTUAL BACKGROUND

1.      BCF operates over 500 retail stores in 44 states and Puerto Rico that sell apparel, housewares, and limited furniture items. The stores vary significantly in size, layout, sales volume, and staffing. Operationally, BCF is divided into 5 geographic Territories and 30 geographic Regions, each with their own chains of supervision. [See Declarations attached hereto as Attachment ("Att.") A, ¶¶3-4; Att. B-H.]

2.      BCF employs hourly LPAs in many, but not all, of its stores. At any given time, BCF has over 1,000 LPAs on payroll, including full and part-timers. LPAs are primarily responsible for matters in the area of safety, inventory shortage, cash handling and theft. Since August 2010, LPAs have been directly supervised by a Regional Loss

Prevention Manager ("RLPM) who oversees all LPAs within the stores in their Region (on average 16 to 20), or, in a few stores, a Loss Prevention Manager. [Att. A, ¶¶3, 9-10.]

3.     BCF employs hourly Loss Prevention Supervisors ("LPS") who also report to the RLPMs. LPSs work under their own job description, and in addition to the regular loss prevention duties, are assigned multiple stores that they travel to and from to assist the RLPMs in the supervision of LPAs in areas such as scheduling, coaching, training, investigations, and audits. [Att. A, ¶11.]

4.     LPAs and LPSs are paid through a loss prevention payroll, administered on a store level by the RLPMs. The loss prevention payroll budgets for each store, and thereby the number of LPAs and the number of hours available for them to work, differs based on factors such as the store's sales volume and loss history. All stores are not allotted the same number of loss prevention hours, and some stores are allotted none. LPA schedules, including overtime approval, are determined by local managers based on business needs, which results in LPAs working varying schedules from store to store, and even week to week. [Att. A, ¶12; Att. B-H; Plaintiff's Depo. excerpts, Att. I, pp. 136-7.]

5.     BCF uses an electronic timekeeping system for tracking employees' hours worked. Each LPA and LPS is issued a magnetic time card that they are required to swipe through card readers located in the stores to record the time they begin and end their work and their time in and out from meal breaks. If they miss a swipe, or perform work before or after swiping, they are required to complete and sign an edit form providing the missing time entries, which store management then enters into the electronic timekeeping system (RLPMs cannot enter or edit information in the system). Edit forms are also used by the LPSs for their time traveling and as needed for working at other stores. The

electronic time swipes and edit form information are used to determine the LPAs' and LPSs' weekly pay, including any overtime pay. Until recently, this information was printed out on timesheets each week, and LPAs and LPSs were required to review the information and verify its accuracy by signing them. Plaintiff, and most of the opt-ins, signed timesheets verifying their accuracy. [Att. A, ¶¶17-18 ; Att. I, pp 164-5, 184.]

6.      BCF's Associate Handbook provides: (1) all associates are required to accurately record their hours worked, and "[w]orking off the clock or continuing to work after clocking out is prohibited by law"; and (2) hourly associates are to be paid 1½ times their regular rate of pay for all hours worked during their pay week in excess of 40 hours. BCF does not permit or condone violations of these policies. [Att. A, ¶¶19-20; Att. B-H.]

7.      LPAs and LPSs who work a shift of 6 hours or longer are generally required to take a 30 minute unpaid meal break (some states, like California, have different rules for meal breaks based on State law). LPAs and LPSs decide when they are going to take their meal breaks. Pursuant to BCF policy, LPAs and LPSs are required to "refrain from all active work responsibilities during meal periods." LPAs and LPSs are not required under BCF policy or authorized practice to record a meal break if they were unable to take one, and the timekeeping system does not automatically record meal breaks. [Att. A, ¶21; Att. E, ¶8; Att. I, p. 63.]

8.      BCF does not have a policy or authorized practice of limiting LPAs or LPSs to a maximum of 3 hours for court appearances or limiting pay for travel time to the time shown in MapQuest or Google Maps. [Att. A, ¶16; Att. B-H.]

9.      BCF's Associate Handbook also provides that all overtime work must be pre-approved by the employee's supervisor. While BCF's policy places limitations on

employees working overtime, neither BCF policy nor practice prohibits LPAs or LPSs who actually work overtime from recording their overtime hours or being paid overtime. RLPMs have the authority to approve overtime where it is required by business needs, and do so in practice. In Retail Year 2011, LPAs and LPSs worked and were paid nearly 14,000 hours of overtime, and over 15,000 hours of overtime in Retail Year 2012. Plaintiff and all of the opt-in Plaintiffs worked and received overtime pay under either the FLSA or applicable state law. For example, Kruzicki recorded and was paid for working overtime in 30 of the 49 weeks (61%) she worked for BCF. [Att. A, ¶¶22-23; Att. I, pp. 177-9.]

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Standard for Collective Action and Plaintiff's Burden of Proof

The decision to create an opt-in class under 29 U.S.C. § 216(b) remains soundly within the discretion of the district court. Hipp v. Liberty National Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001), cert. denied, 122 S.Ct. 1064 (2002). As detailed in the Amended Motion, Hipp suggests a two-tiered approach to class certification. This approach, however, is merely a suggestion. Hipp, 252 F.3d at 1219 ("Nothing in our circuit precedent … requires district courts to utilize this approach."). "District Courts enjoy broad discretion in deciding how best to manage the cases before them …." West v. Verizon Communications, Inc., 2009 U.S. Dist. LEXIS 82668 at *10 (M.D. Fla. 2009).

Even applying the two-tiered approach, court-supervised notice at this stage is not automatic; it is only appropriate in those limited circumstances where the plaintiff demonstrates that: (1) there are potential class members who desire to join the lawsuit; (2) the potential class members are similarly-situated; and (3) the factual similarities

among the plaintiffs are such as to render them manageable as a class and promote the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity; i.e., that providing notice to bring individuals into one case is an efficient way to handle the case. Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989); Haynes v. Singer Co., 696 F.2d 884, 887 (11th Cir. 1983). While Plaintiff's burden is fairly lenient at the initial stage, "it is not invisible." Delano v. MasTec, Inc., 2011 U.S. Dist. LEXIS 59228 *16 (M.D. Fla. 2011). Plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotation marks and citations omitted).

While the Court normally does not weigh the evidence at this stage, it does not follow that the Court cannot consider the evidence presented by BCF. Instead, the Court can consider any evidence it deems necessary to determine if collective certification is appropriate. Creel v. Tuesday Morning, Inc., 2013 U.S. Dist. LEXIS 64090 at *9 (M.D. Ala. 2013) ("… the court should make use of whatever information it has available at the time; it would be a waste of judicial resources to do otherwise."). The approach of considering all of the evidence presented at the initial stage has been followed by judges in the Tampa Division. See, e.g., Hart v. JPMorgan Chase Bank, N.A., 2012 U.S. Dist. LEXIS 175983 *13-14 (M.D. Fla. 2012) (considering defendant's submissions in denying conditional certification); Demauro v. Limo, Inc., 2011 U.S. Dist. LEXIS 1229 at *11 (M.D. Fla. 2011) ("[C]lass certification issues cannot be decided in a vacuum."); West, 2009 U.S. Dist. LEXIS 82668 at *11 ("'It is entirely appropriate for the Court to be cognizant of the factual and legal issues presented by the case when determining whether

this case can be appropriately treated as a collective action.'")(internal citation omitted).

Moreover, where substantial discovery has been conducted with respect to the defendants policies and procedures, courts have applied a stricter standard of review. See, e.g., Holt v. Rite Aid Corp, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004). Here, Plaintiff has deposed BCF's head of loss prevention in detail as to BCF's policies and practices related to LPAs' pay, timekeeping, overtime, and job duties. Additionally, Plaintiff has been provided 2,277 pages of documents, much of which relate to LPAs' pay, timekeeping, overtime, and job duties, and Plaintiff relies on part of this to support her Amended Motion (DE 52-1). [See Att. P.] Plaintiff cannot rely on discovery, and then argue that the Court should limit its determination to her Declarations and should apply the standard of review intended for when substantial discovery has not yet occurred.

**B.     Plaintiff Has Failed To Satisfy The Standard For Collective Action Or Her Burden Of Proof**

*1.     Plaintiff Has Not Made The Required Showing Regarding Potential Class Members Who Desire To Join The Lawsuit.*

Plaintiff's "proof" that others desire to join the lawsuit is the 8 opt-in Plaintiffs and their nearly identical boiler-plate Declaration assertions (Plaintiff did not submit a Declaration in support of her Amended Motion) that the opt-ins "expect that other current and other former employees will join this suit if they are given notice of it and opportunity to join." Mere belief or unsupported expectations that additional plaintiffs will come forward, however, are insufficient to justify certification. Rodgers v. CVS Pharm., Inc., 2006 U.S. Dist. LEXIS 23272 *8 (M.D. Fla. 2006).

Likewise, the mere existence of 8 opt-ins is not sufficient to carry Plaintiff's burden at this stage, especially given that Plaintiff is seeking a nationwide class

potentially consisting of over 3,000 individuals. [Att. A, ¶9.] BCF has over 500 stores in 44 states and Puerto Rico (Facts at ¶1), yet Plaintiff and the opt-ins are from only 8 stores in 5 states, and the following pairs reported to the same Store Manager or RLPM: Burrow/Fakih, Jackson/Mills, and Frausto/Ball. [DE 45, 46; Att. A, ¶24.] A handful of opt-ins from a small number of stores in a small number of the states in which BCF does business does not establish that there are others who desire to join this action, especially as the opt-ins are not all representative of the putative class – Fakih and Burrow assert that they were Men's Wear Specialists (DE 45, 46, ¶4)). This meager showing fails to "successfully engage" BCF's 61 detailed Declarations from putative class members, including those in each of the Regions in which Plaintiff and the opt-ins worked, evidencing that Plaintiff's/opt-ins' claims are an anomaly. [See Atts. J-O.] As such, Plaintiff's Amended Motion should be denied. See Hart, 2012 U.S. Dist. LEXIS 175983 at *13-14 (plaintiff failed to make the requisite showing that others desired to join the lawsuit in light of "the minimal number of potential opt-in plaintiffs identified by Plaintiff compared to the total number of individuals employed … as debt collectors, together with the overwhelming number of declarations to the contrary submitted by JPMorgan"); Beecher v. Steak N Shake Operations, Inc., 2012 U.S. Dist. LEXIS 162804 *29 (N.D. Ga. 2012) (23 plaintiffs, 20 of whom worked in one state and mostly in 4 stores, was insufficient to conditionally certify a nationwide class of 65,000 employees).

It is important to note that the small number of opt-in Plaintiffs in this action are not as a result of lack of effort by Plaintiff's counsel. To the contrary, since at least February, Plaintiff's counsel has been contacting putative class members throughout the Country, and has advertised this matter on a law firm website. [See Att. Q.] After months

of effort, they have found only a handful of dissimilar opt-ins, with divergent off the clock claims, to join. This alone warrants denial of Plaintiff's Amended Motion. <u>Pfohl v. Farmers Ins. Group</u>, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. 2004).

In sum, Plaintiff has failed to make the required showing that others desire to join this action. As such, Plaintiff's Amended Motion should be denied.

**2.      *Plaintiff Has Not Made The Required Showing That Similarly Situated Individuals Exist In This Case***

The burden of proof to establish that potential class members are "similarly situated" remains at all times with Plaintiff; to satisfy it, Plaintiff must present more than unsupported, generalized allegations. <u>Hipp</u>, 252 F.3d at 1219; <u>Haynes</u>, 696 F.2d at 887. Plaintiff has failed to satisfy her burden, as Plaintiff identifies the potential class members as "[a]ll Loss Prevention Associates or other Loss Prevention employees with other titles, who are or were employed with Defendants within the past three years preceding this lawsuit." [DE 52, p.4, ¶9.] It is impossible to make a colorable argument that all such individuals are similarly situated as there is simply no way to determine which of BCFs ~30,000 employees (Att. A, ¶6) fall within the vague and undefined category of "other Loss Prevention employees with other titles." Plaintiff glosses over this, disingenuously referring to anyone she seeks to include in the class, regardless of their actual job title and lack of any proof that they are similarly situated as a "Loss Prevention Associate."

Further, Plaintiff relies on the boilerplate, conclusory assertion in her supporting Declarations that "each store is a mirror image of each other, including management, policies, merchandise, and layout." Putting aside that this is not even plausible, there is no foundation for it as the Declarants have not indicated how many stores they have actually visited, how they would have knowledge of what is occurring in over 500 stores,

or even what policies they are referring to. As such, this assertion is insufficient to satisfy Plaintiff's burden. See Ramos v. Burger King Corp., 2011 U.S. Dist. LEXIS 115653 *4 (M.D. Fla. 2011) ("Plaintiffs' affidavits are not probative of the similarly situated question because they merely offer conclusory allegations and provide no real evidence…."); Palacios v. Boehringer Ingelheim Pharms., Inc., 2011 U.S. Dist. LEXIS 92002 *15 (S.D. Fla. 2011)("Federal courts routinely decline to certify collective action when the plaintiff's assertions are conclusory or lack evidentiary foundation.").

Plaintiff's claim that "Loss Prevention Associates" are subject to identical job requirements and pay provisions suffer similar deficiencies, as they are based on vague, unsupported, and conclusory allegations. Moreover, Plaintiff's supporting Declarations actually establish that Plaintiff and the opt-ins are not similarly situated, as follows:

(1) **Dissimilar Job Classifications** – Burrow and Fakih claim to have been Men's Wear Specialists, which is a Sales Associate position [DE 45, 46; Att. A, ¶8];

(2) **Dissimilar Duties** – only Burrow and Fakih claim to have been required to perform the duties of other hourly store employees; only Kruzicki claims to have worked from home [DE 45, 46, 48];

(3) **Dissimilar Timekeeping Requirements** – Kruzicki claims she was required to record her overtime hours on edit sheets; Frausto, Burrow, Fakih, and others claim they were not allowed to record more than 40 hours; and Jackson claims she was not allowed to record more than her scheduled (normally 36) hours [DE 29-6, 45-49];

(4) **Dissimilar Hours Allegedly Worked** – Kruzicki 60-70 hours/week; Mims 55-60 hours/week; Fakih and Burrow 45 hours/week (later reduced to 12 hours/week); Frausto 43-44 hours/week; Ball 50-55 hours/week; Jackson 40-41 hours/week; Mills 55-

11

60 hours/week; and Plaintiff 42 hours/week [DE 29-6, 42, 44-49; DE 1, p.7, ¶40];

**(5) <u>Dissimilar Alleged Decision-makers</u>** – Plaintiff claims FLSA violations by 2 members of store management in Tampa, FL; Frausto claims violations by 1 Store Manager in City of Industry, CA; Burrow and Fakih claim violations by 1 Store Manager in Bradenton, FL; Jackson and Mills claim violations by 1 RLPM in Georgia; Mims claims violations by 1 member of store management in Chicago, IL; Ball claims violations by an undisclosed number of Store Managers in CA, and Kruzicki claims violations by "management" in Lakewood, WA. [DE 29-6, 42, 44-49; Att. I, pp. 146-8];

**(5) <u>Dissimilar Alleged Pay Violations</u>** – **(a)** Kruzicki alone alleges that she received some compensatory time in lieu of overtime pay, was not paid for all of her time traveling between stores, and was not paid for time working from home and meeting with management off-duty [DE 48]; **(b)** only Jackson and Mills raise claims regarding time spent in court (but their assertions differ despite accusing the same RLPM) [DE 29-6, 42]; **(c)** Plaintiff alone claims that hours she recorded were "shaved" from the system [DE 1, p.7]; **(d)** Mims and Ball claim that they were docked a lunch break every day, even if they did not take one; Plaintiff concedes that she did not always have a lunch break deducted [DE 44, 49; Att. I, p.167]; **(e)** Burrow and Fakih alone claim that they were required to continue working off the clock to perform non-LPA duties [DE 45, 46]; Frausto alone claims that she was required to remain at work until the last *customer* left (dictated by the customers); Ball, who worked in the same Region as Frausto, claims he had to stay until the last *employee* left (dictated by store management) [DE 44, 47; Att. A, ¶24]; **(f)** Mills alone claims unpaid time for attending training [DE 42].

These are not superficial distinctions.[1] For example, the differences in job duties have resulted in different alleged violations – Kruzicki's relate to her performance of LPS duties – she alone alleges not being paid for all of her time traveling between stores. The differences in alleged violations also result in different legal issues; e.g., are Jackson's alleged unpaid non-overtime hours (36 to 40) covered by the FLSA. Moreover, Plaintiff's supporting declarations clearly show that the alleged violations were predominately made by a small number of wholly unrelated members of store management. Thus, Plaintiff has not met her burden of establishing commonality as "[a]bsent some showing that … [the decisionmakers] operate in lockstep, the denial of overtime compensation by one decisionmaker does not readily suggest similar denials by other decisionmakers …." Reed v. Mobile County School System, 246 F. Supp. 2d 1227, 1233 (S.D. Ala. 2003).

In an attempt to establish commonality among widely divergent off-the-clock alleged violations, Plaintiff attempts to show they were the product of a single decision, policy, or plan that violated the law. More specifically, Plaintiff cites to the Declaration of Mark Duncan, a former RLPM for one of BCF's 30 regions. [DE 51, ¶2.] According to Duncan, however, the alleged "policy" that was communicated to him by his supervisors was that "the Loss Prevention Associates were not to work over forty (40) hours per week and incur overtime pay." [DE 51, ¶9.] Such policy, even if accepted as true, does not violate the FLSA. Nowhere does Duncan indicate that it was BCF's policy to require LPAs to work more than 40 hours without overtime compensation. To the contrary, Duncan claims it was individual rogue Store Managers in his Region who purportedly required some unnamed LPAs in his Region to work more than 40 hours without

---

[1] Even if they were, "the similarities required to maintain a collective action … must extend beyond the mere facts of job duties and pay provisions." West, 2009 U.S. Dist. LEXIS 82668 at *12 (internal citation omitted). Plaintiff has not met that burden.

overtime compensation. [DE 51, ¶13.] Clearly these alleged actions were not part of any BCF plan, as is evidenced by Duncan's claim that he told these Store Managers that they could not work the LPAs off the clock. [DE 51, ¶13.]

Plaintiff also points to the Declaration of Traci Moore, a former member of Store 290 management in Morrow, Georgia. Moore asserts that BCF "has a policy, which applies to all Burlington Coat Factory stores, restricting… [LPAs] from working overtime **unless it is approved** by the… [RLPM]." [DE 50, ¶9 (emphasis added).] This is a correct recitation of BCF's policy (Facts, ¶9), and stands directly contrary to the claims in Plaintiff's Amended Motion and supporting Declarations that overtime is prohibited.[2] Thus, if anything, Moore and Duncan confirm BCF's position – assuming any violations occurred, which BCF denies, they were the product of Store Managers who acted contrary to established policy and not pursuant to a uniform plan.

Lastly, Plaintiff points to an email from Heather Brown, one of BCF's 30 RLPMs, as proof that BCF had a policy of prohibiting LPAs from working over 40 hours per week. [DE 52, p.16.] Even if this were true, it does not carry Plaintiff's day. See Beecher, 2012 U.S. Dist. LEXIS 162804 *26 ("that Defendant generally discourages managers from allowing overtime work" "is not enough glue to hold this proposed class together"). Moreover, Plaintiff's assertion is a knowing misrepresentation as the entire email chain shows that overtime was allowed with prior approval. [Att. C ¶13, Ex 1.]

Plaintiff's conclusory Declarations fail to "successfully engage" Defendant's detailed Declarations establishing that **(1)** BCF's stores vary significantly in size, layout,

---

[2] Moore's claim that her Store Manager allegedly shaved time off of an "hourly employee's" time records is irrelevant as it is obvious that the unnamed "hourly employee" she references was not an LPA. It is also clear from Moore's Declaration that no common plan existed to deny hourly employees overtime, as Moore was allowed to correct the situation and pay the employee overtime. [DE 50, ¶22.]

sales volume, and staffing [Facts, ¶1]; **(2)** the number of LPAs employed at a store and the number of hours available for an LPA to work varies from store-to-store based on the store's sales volume and loss history; as such, LPAs do not all work the same number of hours [Facts, ¶4]; **(3)** LPAs are assigned a wide range of schedules based on store needs (except for Frausto, who created her own schedule [Att. C]), which can change from week to week; as such, like Plaintiff and the opt-ins, LPAs and LPSs do not all work the same schedules or the same number of hours each week [Facts, ¶4; Att. C, ¶14; Att. A, Exs. 4, 6]; **(4)** significant differences exist between the duties performed by the different classifications of what Plaintiff calls "Loss Prevention Associates" – LPAs, LPSs, and Sales Associates [Facts, ¶¶2-3; Att. A, ¶8]; **(5)** LPAs and LPSs determine their own meal break times [Facts, ¶7]; **(6)** significant differences exist between the timekeeping of LPAs and LPSs, as LPSs may self-report much of their time on edit forms instead of card swipes [Facts, ¶5]; **(7)** loss prevention employees have recorded and have been paid for nearly 30,000 hours of overtime in the last 2 years, [Facts, ¶9]; **(8)** Plaintiff and the opt-ins all recorded and were paid FLSA or State overtime [Facts, ¶9]; and **(9)** the alleged violations were contrary to BCF policy and practice. [Atts. A-H.]

Denying conditional certification under circumstances analogous to this case, the court in Hart opined:

> Plaintiff and the declarants each complain of widely divergent "off-the-clock" violations …. The existence of divergent theories of liability is not surprising given that the putative class members were subject to, inter alia, different supervisors, timekeeping practices, and job obligations and responsibilities.  As a result, plaintiff-specific inquiries would be required as to numerous issues including … whether plaintiffs actually worked "off the clock," whether plaintiffs modified their time records to reflect the actual time worked, whether plaintiffs' supervisors were aware of any "off-the-clock" work, … and whether any "off-the-clock" work fell within the de minimis exception to the FLSA.

15

2012 U.S. Dist. LEXIS 175983 at *16-17. Likewise, the court in Shim v. Echosphere, L.L.C., 2010 U.S. Dist. LEXIS 135984 *5-6 (S.D. Fla. 2010) denied conditional certification, opining:

> While the opt-in plaintiffs apparently held similar job descriptions and were subject to similar pay and time-tracking policies to those of Plaintiff Shim, they all worked in varied locations spanning from New York to California. … this is important because the Court would have to analyze the work experience and employment policies of each individual at each location across the nation.

See also Heath v. Hard Rock Café Int'l, Inc., 2010 U.S. Dist. LEXIS 107440 *15-16 (M.D. Fla. 2010) ("The lack of evidence regarding a national common policy and Plaintiffs' failure to counter Hard Rock's assertions that these decisions were decentralized and were made by the managers at each … location … weighs against providing nationwide notice."); Latortue v. Fast Payday Loans, Inc., 2010 U.S. Dist. LEXIS 145346 (S.D. Fla. 2010) (denying collective certification where company had a policy prohibiting "off the clock" work, and had actually paid overtime wages); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying motion for notice where "claims are based on local policies of various managers located at different sites," not a centralized, company-wide policy that violates the FLSA).

Further, where, as here, an undisputed written policy expressly prohibits the alleged violations, and no showing has been made that the defendant had a practice of violating its policy – BCF has paid thousands of hours of overtime to its loss prevention employees (Facts, ¶9) – conditional certification has been found inappropriate. See Hart, 2012 U.S. Dist. LEXIS 175983 *20 n.18 ("In the absence of any evidence tending to show that Defendants routinely breached FLSA's pay provisions, these deviations are case-specific and subject to variables, making them unfit for a collective action" (citation

omitted)); Thompson v. Speedway Super America LLC, 2009 U.S. Dist. LEXIS 3816 *10-11 (D. Minn. Jan. 20, 2009) ("although plaintiffs have offered evidence that a tiny fraction of the … putative class may not have received some of the compensation that they were due under the FLSA and under [defendant's] own published policies, plaintiffs have not established a colorable basis for their claim that [defendant] implemented a corporate decision to ignore its published policies."); Williams, 2006 U.S. Dist. LEXIS 50653 *15 (denying conditional certification where defendant actually paid employees overtime; "an individualized inquiry into why some were not paid overtime is required").

In sum, Plaintiff has failed to make the required showing that the putative class members are similarly situated.  As such, Plaintiff's Amended Motion should be denied.

### 3.     *Providing Notice Will Not Promote The Efficient Resolution Of These Proceedings*

Here, despite any arguable factual similarities, the potential class members' claims are clearly unmanageable as a class, as the alleged overtime violations were not the product of a policy that, if the Court found illegal, would result in class-wide liability. Instead, as even Plaintiff must concede, they are the product of decisions by hundreds of individual current and former members of BCF store management from over 500 stores across the nation. As it is, hearing Plaintiff's and the opt-ins' claims together will likely be unmanageable as it will require consideration and resolution of hundreds of unrelated instances of alleged overtime violations involving a multitude of different managers, as well as hundreds of credibility determinations (including the effect of the timesheets verified by Plaintiff and others), in addition to resolving the legal issues raised in BCF's defenses. Conditional certification will serve no purpose other than to expand these individualized determinations from the hundreds to the thousands. The need for such

individualized inquiries in this case clearly contravenes the "basic theory of judicial economy upon which the certification of collective actions is based." West, 2009 U.S. Dist. LEXIS 82665 at *20; see also Hinojos v. Home Depot, Inc., 2006 U.S. Dist. LEXIS 95434 *8 (D. Nev. 2006) (individualized inquiries are "the antithesis of collective action treatment and would ... eliminate any judicial efficiency that might be gained through a collective approach"). Most courts consider collective certification to be inappropriate under such circumstances. See, e.g., Hart, 2012 U.S. Dist. LEXIS 175983 (supra); Alvarez v. Sun Commodities, Inc., 2012 U.S. Dist. LEXIS 85177 *13 (S.D. Fla. 2012) (individualized off-the-clock inquiries rendered the case inappropriate for collective treatment); Williams, 2006 U.S. Dist. LEXIS 50653 *14 (supra).

Plaintiff's attempt to convince this Court that "[n]umerous courts have granted collective actions in similar cases" is misleading at best. The cases cited by Plaintiff are inapplicable as all but one involved an indisputable policy, such as classifying employees as overtime exempt, that gave rise to the alleged violations; thus, class-wide liability could be determined by resolving the issue of whether the policy violated the FLSA. See, e.g., Stuven v. Texas De Brazil, 2013 U.S. Dist. LEXIS 22240, *11 (M.D. Fla. 2013) (undisputed company-wide policy requiring plaintiffs to pay for their own uniforms and "walk-out" customers directly from their tips). The sole off-the-clock case cited by Plaintiff that did not involve an indisputable policy, Shakib v. Backbay Restaurant Group, Inc., 2011 U.S. Dist. LEXIS 124143 (S.D. N.J. 2011), is from outside this Circuit and took the rubber stamp approach that has been rejected by numerous courts within this Circuit. See Hart, 2012 U.S. Dist. LEXIS 175983 (discussion, supra); Alvarez, 2012 U.S. Dist. LEXIS 85177 (denying collective certification despite plaintiff's claim of a

company-wide pay policy); <u>Hardemon v. H&R Block Eastern Enters.</u>, 2011 U.S. Dist. LEXIS 93991 (S.D. Fla. 2011) (denying collective certification even though the plaintiffs alleged a national, unifying policy); <u>Mancuso v. Fla. Metro. Univ., Inc.</u>, 2010 U.S. Dist. LEXIS 140404 (S.D. Fla. 2010) (denying nationwide collective certification despite plaintiff's claims of a common policy/scheme).

     In sum, treating this matter as a collective action will not promote the efficient resolution of these proceedings. As such, Plaintiff's Amended Motion should be denied.

**C.**    <u>**Equitable Tolling**</u>

     Plaintiff fails to provide any basis for tolling the statute of limitations to the date of her Complaint for all putative class members. Absent extraordinary circumstances, "only a written consent to opt-in will toll the statute of limitations on an opt-in plaintiff's cause of action." <u>Grayson</u>, 79 F.3d at 1106 (rejecting tolling as of filing of original complaint); <u>Fiore v. Goodyear Tire & Rubber Co.</u>, 2011 U.S. Dist. LEXIS 24371 *10 (M.D. Fla. 2011) (denying plaintiff's request for equitable tolling of FLSA action; plaintiff failed to demonstrate that extraordinary circumstances warrant such tolling). As Plaintiff has failed to indentify any extraordinary circumstances justifying equitable tolling, her request should be denied.

**D.**    <u>**Plaintiff's Proposed Notice**</u>

     If the Court finds conditional certification appropriate, the proposed Notice should be modified. Where, as here, the Declarations do not evidence personal knowledge of employment conditions in other stores, the notice should be limited to employees at the declarants' stores. <u>Tucker v. Labor Leasing, Inc.</u>, 872 F. Supp. 941, 948 (M.D. Fla. 1994) (limiting notice to specific location at which declarants worked because

they failed "to provide any evidence with respect to the job requirements or pay provisions" of employees in other locations). Also, the proposed Notice is misleading as it states, "**you will not be charged any fees or costs unless there is a recovery.**" Instead, it should read: "if you do opt-in you may be required to respond to written questions and requests for documents, sit for depositions and/or testify in court. If you do opt-in and you are unsuccessful on the merits of the claim, you may be responsible for [BCF's] costs in this matter." See Cox v. Appliance Direct, Inc., 2008 U.S. Dist. LEXIS 65841 *2 (M.D. Fla. 2008). The provision in the proposed Notice regarding retaliation should also be stricken. See Espanol v. Avis Budget Car Rental, LLC, 2011 U.S. Dist. LEXIS 120485 *3 (M.D. Fla. 2011).

If Notice is given, it should be in the form attached hereto as "Att. R," and individuals should have 45 days to respond, not 90 days. BCF further requests that notice be sent by a neutral third party to protect the privacy interests of the non-party employees. See, e.g., Torres v. CSK Auto, Inc., 2003 U.S. Dist. LEXIS 25092 *9 (W.D. Tex. 2003) (rejecting plaintiff's request for information derived from personnel records).

## IV.   CONCLUSION

For reasons discussed above, the Court should deny Plaintiff's Amended Motion. If the Court grants Notice, it should be in the form and manner proposed by BCF.

s/ Jeffrey E. Mandel
Jeffrey E. Mandel
Florida Bar No. 613126
Email:  jmandel@laborlawyers.com
FISHER & PHILLIPS LLP
200 South Orange Avenue, Suite 1100
Orlando, Florida 32801
Telephone:  (407) 541-0888
Facsimile:  (407) 541-0887
Counsel for Defendants

Orlando 119314.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 25, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to Counsel for Plaintiff Mitchell L. Feldman, Esquire, Bradley A. Tobin, Esquire, Joseph Odato, Esquire, FELDMAN MORGADO, P.A., 501 North Reo Street, Tampa, Florida  33609.

s/ Jeffrey E. Mandel
Jeffrey E. Mandel

Orlando 119314.1