UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH CHALKER,

     Plaintiff,

v.                                  CASE NO.: 8:12-cv-2755-T-23TBM

BURLINGTON COAT
FACTORY OF FLORIDA, LLC, et al.,

     Defendants.

_____/

## **ORDER**

     The plaintiff sues Burlington Coat Factory (Doc. 1) and alleges violations of the Fair Labor Standards Act.  The plaintiff alleges that Burlington Coat Factory forced her and other Loss Prevention Associates to work overtime, "off-the-clock," and without compensation.  The plaintiff moves (Doc. 52) for conditional certification of a class of "[a]ll Loss Prevention Associates or other Loss Prevention employees with other titles, who are or were employed with Defendants within the past three years preceding this lawsuit and [who] elect to opt-in to this action pursuant to FLSA 29 U.S.C. Section §216(b)."  (Doc. 52 at 4)  The proposed class encompasses more than a thousand employees[1] from more than five hundred retail stores in forty-four states.

---

[1] The precise number of employees that the putative class includes is unknown. Burlington Coat Factory has "over 1,000 [Loss Prevention Associates] on payroll" at "any given time" (Doc. 55 at 3) but employs the ambiguous description "other Loss Prevention employees with other titles."

Section 216(b) of the FLSA authorizes an employee to bring suit against an employer on behalf of other "similarly situated" employees.[2]  "The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court."  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001).  The Eleventh Circuit suggests, subject to the district court's discretion, a "two-tiered" approach to class action certification under the FLSA:

> At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery."

*Hipp*, 252 F.3d at 1218.  Despite a lenient standard, the plaintiff's "burden at the notice stage . . . is not invisible[, and] federal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees."  *Delano v. MasTec, Inc.*, 2011 WL 2173864, at *5 (M.D. Fla. June 2, 2011) (Whittemore, J.) (quotation marks omitted).

---

[2] "[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996).

For certification at the notice stage, the plaintiff must show that "1) there are other employees who desire to opt in to the action[] and 2) the employees who desire to opt in are 'similarly situated.'" *Delano*, 2011 WL 2173864, at *4. To show that the potential plaintiffs are similarly situated, the plaintiff must "demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1236 (S.D. Ala. 2008). To prove a common, unlawful policy, the plaintiff identifies the statements of managers Mark Duncan, Heather Brown, and Traci Moore.

The plaintiff identifies two sentences in Duncan's declaration. The first sentence says, "Despite the hourly, non-exempt employees being restricted to no more than forty (40) hours per week, I became aware that the hourly, non-exempt[] employees, including Loss Prevention Associates[] in my Region were told by their store managers to work off the clock in order to complete their job duties." (Doc. 51 at 2) The second sentence says, "[A]ll hourly non-exempt employees of Burlington Coat Factory also worked off the clock in order to comply with company policy of not working overtime but yet following the orders of their store managers to work off the clock." (Doc. 51 at 3) Rather than proving a common, unlawful policy, Duncan says that individual store managers, not a company-wide policy, instructed the employees to work without pay. Thus, if anything, Duncan's statements disprove the plaintiff's contention that a "common scheme applied uniformly" to "force [employees] to work off the clock." (Doc. 52 at 16) Duncan's statements identify a

- 3 -

common policy – the company instructed employees not to work overtime.  But that policy is lawful and is different from a policy that "force[s employees] to work off the clock."  (Doc. 52 at 16)

The plaintiff also quotes an e-mail written by Brown that says, "No Overtime at all...this is a Corporate directive."  (Doc. 51-1 at 1)  However, the plaintiff fails to quote the remainder of the e-mail chain in which Brown says that overtime is allowed if the overtime is approved and that Brown will approve overtime "case by case."[3]  (Doc. 55-4 at 5)  Also, Brown never says that employees must work overtime without pay.  Like Duncan, Brown identifies a company policy of discouraging overtime, but discouraging overtime differs from forcing an employee to work without pay.  Again, discouraging an employee's working overtime is not unlawful and is insufficient to warrant class certification; forcing an employee to work overtime but without overtime pay is the concern of the FLSA.[4]  *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1298 (N.D. Ga. 2012) (holding that "the

_____

[3] This policy is corroborated by Traci Moore, who says that Burlington Coat Factory has a policy "restricting its hourly employees . . . from working overtime unless it is approved." (Doc. 50, ¶ 9)

[4] Discouraging overtime work is insufficient because, other than requiring employees to work without pay, a company can reduce or eliminate overtime hours by hiring additional employees, reducing services, encouraging efficiency in the workplace, or redistributing work to employees who have not reached the overtime threshold – all of which are legal.

fact that Defendant generally discourages managers from allowing overtime work" is

"not enough glue to hold th[e] proposed class together").[5]

The potential plaintiffs are dissimilar in many other ways, which the

defendants correctly identify. (Doc. 55 at 11-12) As *Hart v. JPMorgan Chase Bank,*

*N.A.*, 2012 WL 6196035, at *5 (M.D. Fla. Dec. 12, 2012) (Whittemore, J.) (footnotes

omitted), explains in a similar circumstance:

> Plaintiff and the declarants each complain of widely divergent
> "off-the-clock" violations . . . . The exist[ence] of divergent theories of
> liability is not surprising given that the putative class members were
> subject to, *inter alia*, different supervisors, timekeeping practices, and
> job obligations and responsibilities. As a result, plaintiff-specific
> inquiries would be required as to numerous issues including, *inter alia*,
> whether plaintiffs actually worked "off the clock," whether plaintiffs
> modified their time records to reflect the actual time worked, whether
> plaintiffs' supervisors were aware of any "off-the-clock" work, whether
> plaintiffs agreed to mandatory arbitration, and whether any
> "off-the-clock" work fell within the de minimis exception to the FLSA.

As in *Hart*, 2012 WL 6196035, at *5, the "individualized inquiries make the

certification of a collective action in this proceeding unwarranted." *See Freeman v.*

---

[5] The plaintiff also cites a portion of Traci Moore's declaration that explains how a regional
manager once:

> reiterated Burlington Coat Factory's policy of restricting its hourly
> employees from incurring overtime pay and stated that no overtime
> pay was allowed unless it [sic] he approved it. [The regional
> manager] routinely complained about the managers . . . exceeding
> their payroll budgets and threatened the managers that there would
> be consequences, including write ups, if they allowed their hourly
> employees to work overtime.

(Doc. 50, ¶ 11) Like Duncan and Brown, Moore shows that the company disfavored overtime work
and required supervisory approval for overtime, but Moore never claims that company policy
requires an employee to work without compensation.

*Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003) ("These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights.").[6]

In sum, the plaintiff has presented evidence that Burlington Coat Factory discouraged overtime.  But the plaintiff has presented no evidence of a "common scheme applied uniformly" and nationwide across more than five hundred stores to "force [employees] to work off the clock."  (Doc. 52 at 16)  To the contrary, the plaintiff's evidence suggests, at most, that one or more store managers, acting independently and not in accord with a common policy (and in defiance of stated policy), coerced some employees into working overtime without compensation.  Also, the defendants have presented evidence that demonstrates an array of consequential differences between the employees, and those differences defeat the prospect of achieving judicial economy by resort to a collective action.  Accordingly, the plaintiff's motion (Doc. 52) for conditional certification of a nationwide class is **DENIED**.

ORDERED in Tampa, Florida, on November 7, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[6] Because the potential plaintiffs are not similarly situated, this order need not address the other half of the certification inquiry – whether other employees wish to opt into this action.